USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __8/3/2022_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
NIGEL FREDRICKS,                                      :
                                                     :
                                                     :
                        Plaintiff,                   :        **REPORT &**
                                                     :        **RECOMMENDATION**
        -v-                                          :        20-CV-5738 (AT) (JLC)
                                                     :
ALEXIS PARRILLA, DUAYNE JOHN, JOHN                   :
SHAHEEN, TRAVIS RICHARDS, ANDREW                     :
HENRY, and OMAR SMITH,                               :
                                                     :
                                                     :
                        Defendants.                  :
                                                     :
-----------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Analisa Torres, United States District Judge:**

Nigel Fredricks, proceeding *pro se*, brings this action against six individual

defendants from the New York City Department of Correction ("DOC") in their

personal and official capacities, including Correction Officers John Shaheen, John

Richards, and Andrew Henry, Assistant Deputy Warden Alexis Parrilla, and

Captains Duayne John and Omar Smith (collectively, "Defendants").[1]  Fredricks

alleges that Defendants violated his rights under the First and Fourteenth

Amendments to the United States Constitution during his pretrial incarceration at

Rikers Island.  Specifically, Fredricks alleges that Defendants failed to protect him,

---

[1] Defendant names are listed and spelled as provided in Defendants' pleadings, with
the exception of Correction Officer John Shaheen, whom Defendants identify as
"Correction Officer SM Shaheen," but whose name appears as "Correction Officer
John Shaheen" on the docket.

incited an attack by an inmate against him, retaliated against him, and failed to intervene when the inmate attacked him.

Before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons discussed below, I recommend that the motion be granted.

## I.    BACKGROUND

### A. Factual Background

The following facts are taken from Defendants' Local Civil Rule 56.1 Statement, the pleadings, as well as the affidavits, declarations, exhibits, and supporting materials submitted by the parties.  The facts are undisputed except as noted.

On January 3, 2020, Fredricks was a pretrial detainee in the custody of the DOC on Rikers Island, housed in the George R. Vierno Center ("GRVC").  Fourth Amended Complaint ("FAC"), Dkt. No. 46, at 2.[2]  Declaration of James R. Murray dated December 31, 2021 ("Murray Decl."), Exhibit I, Plaintiff's Deposition Transcript ("Pl. Dep."), at 46:2–25, Dkt. No. 91-9.  That same day, he was transferred from GRVC to a different facility, North Infirmary Command ("NIC").  *Id.* at 50:17–25.  Upon arrival at NIC, Fredricks was taken to the Intake Unit.  *Id.* at 51:3–9.  The events discussed below occurred between January 3, 2020 and the morning of January 4, 2020.

---

[2] For all references to page numbers in Fredricks' FAC and his opposition papers, the page numbers cited refer to the ECF filing number.

### 1. Fredricks Spoke with CO Andrew Henry When Arriving at NIC

Corrections Officer Andrew Henry ("CO Henry") was stationed at Intake A Main post when Fredricks arrived at NIC.  Murray Decl., Exh. D at 2, Pl. Dep. at 60:22–25; 61:1.  Fredricks asked CO Henry, "Are you aware of my situation?  Do you know that I cannot be left with certain people as far as gang members?"  Pl. Dep. at 61:14–19.  Fredricks did not tell CO Henry that the reason he believed he could not be housed with gang members was because he had filed a federal civil rights lawsuit against a New York State correction officer, which was pending in the Northern District of New York.  *Id.* at 63:8–9.[3]  Fredricks also did not specify any particular gang members or inmates to CO Henry, although in his deposition, Fredricks testified that in his mind he was talking about the "Bloods."  *Id.* at 63:12–20.  At the time, Fredricks was not in a gang and had never been in a fight with a gang member.  *Id.* at 63:24–25, 64:1–4.  CO Henry has no recollection of speaking with Fredricks and he was not aware of any potential threats to Fredricks' safety at the time.  Murray Decl., Exh. D at ¶¶3–4.

### 2. Fredricks Was Then Moved to Housing Area 3D

After arrival at NIC, Fredricks was escorted to Housing Area 3D, but upon his arrival he heard inmates "screaming they gang stuff out [sic]."  Pl. Dep. at 54:13–22, 55:1–11.  Fredricks did not speak to these inmates directly, nor did any of

---

[3] In his deposition, Fredricks named several other lawsuits he had filed at the time.  *See* Pl. Dep. at 9:12–19.  However, at the time of the incident in question, in January 2020, the only pending lawsuit that Fredricks had filed was in the Northern District of New York.

the inmates explicitly threaten to harm Fredricks.  *Id.* at 55:12–18, 71:23–25.  At

his request, Fredricks was taken back to the Intake Unit.  *Id.* at 56:7–13, 71:5–13.

### 3. Fredricks Returned to the Intake Unit and Spoke with ADW Alexis Parrilla

Upon returning to the Intake Unit, Fredricks spoke with Assistant Deputy

Warden Alexis Parrilla ("ADW Parrilla").  *Id.* at 72:2–12.  Fredricks told ADW

Parrilla the following:

> Listen, they try to take me to a house.  My situation, I
> would like you to look into my situation.  I cannot be
> living with these Bloods, these gang members.  I got cases
> pending in court, got a lot of situations going on, and far
> as cases with new charges, so respectfully, man, can you
> please put me in a cell by myself?

*Id.* at 72:4–12.  Fredricks did not elaborate on what cases he had pending nor did he

specify whom he feared.  *Id.* at 72:13–17.  Fredricks later explained at his

deposition, "[a]s far [as] the Northern District, I didn't get into much detail, give

them the whole story, because I was hoping or assuming that [ADW Parrilla] would

go and check something."  *Id.* at 72:20–24.  According to Fredricks, ADW Parrilla

told him he would "look into" his situation, left the Intake Unit, and did not return.

*Id.* at 73:22–25, 74:1–6.  ADW Parrilla has no recollection of speaking to Fredricks,

and he had no personal knowledge of any potential threat to Fredricks' safety at the

time.  Murray Decl., Exh. C at ¶¶4–5.

### 4. Fredricks Returned to Housing Area 3D and Encountered Captain Duayne John

After speaking with ADW Parrilla, Fredricks was taken back to Housing

Area 3D, where he was placed in his own cell that shared a common area with

4

another inmate, Peter Rodriguez.  Pl. Dep. at 80:21–25, 81:1–3, 83:5–20.  Prior to
this day, Fredricks and Rodriguez had never met or spoken.  *Id.* at 32:21–24;
115:10–17.  At the time, both Fredricks and Rodriguez were classified as maximum
custody inmates with "enhanced restraint status."  Murray Decl., Exh. E at ¶¶7–8.

Soon after arriving at his cell, Captain Duayne John ("Captain John")
brought Fredricks a mattress.  Pl. Dep. at 81:4–21.  According to Fredricks, Captain
John then gave Rodriguez a "subliminal message" by telling him that Fredricks
"fight[s] with the mob and start[s] the Complaint."  *Id.* at 81:6–8, 86:10–13.  When
asked at his deposition whether Captain John told Rodriguez to harm him,
Fredricks responded, "He didn't say it is personally [sic].  I don't think he would do
it like that.  I believe Peter Rodriguez knew what time it was."  *Id.* at 87:1–5.
Fredricks testified that he understood Captain John's statement "to mean
retaliation" and that "anyone" might retaliate against him.  *Id.* at 86:12–21.
Captain John has no recollection of bringing Fredricks a mattress or speaking with
Rodriguez.  Murray Decl., Exh. E at ¶¶9–12.  Further, Captain John never spoke to
any inmate regarding any fights or grievances relating to Fredricks.  *Id.* at ¶11.  At
the time, Fredricks did not have any pending grievances with DOC.  *See* Pl. Dep. at
38:8–18.  Fredricks did have a pending lawsuit in the Northern District of New
York, of which Captain John was unaware.  *Id.* at 72:22–25, 73:1–11, Murray Decl.,
Exh. E at ¶¶4–5.  Finally, according to Fredricks, although Captain John had
served him an infraction for fighting DOC officers several weeks earlier, Pl. Dep. at
48:19–22, Fredricks never discussed the infraction with him and he did not know

why the infraction had been issued, nor did he investigate it.  *Id.* at 49:19–25; Murray Decl., Exh. E at ¶6.

### 5. Fredricks Spoke with CO John Shaheen on the Morning of January 4, 2020

On the morning of January 4, 2020, Rodriguez was released from his cell to the common area, after which he "played cool" with Fredricks, who was still in his cell, offering him cookies through the bars of the cell.  *Id.* at 85:3–11, 90:13–19.  CO John Shaheen ("CO Shaheen") and CO Travis Richards ("CO Richards") then arrived and released Fredricks from his cell.  *Id.* at 91:10–15.  CO Shaheen asked Fredricks if he had any issue living with Rodriguez, to which Fredricks responded that he did not.  Murray Decl., Exh. H at ¶4.  CO Shaheen asked the same of Rodriguez, who also denied having any issues.  *Id.* at ¶5.  Fredricks contends that CO Shaheen never asked this question.  Plaintiff's Opposition to Motion for Summary Judgment ("Pl. Opp.") at 9.

### 6. Rodriguez Attacked Fredricks and CO Shaheen and CO Richards Responded

Later that morning, while both were in the common area, Rodriguez approached Fredricks from behind, grabbed his head, and cut his face with what appeared to be a sharp metal object.  Murray Decl., Exh. J at 11:05:45; Pl. Dep. at 102:5–6.[4]  Fredricks then made a kicking motion towards Rodriguez.  Murray Decl., Exh. J at 11:05:45–48.  CO Shaheen verbally instructed both inmates to stop

---

[4] Exhibit J to the Murray Declaration is a copy of the security camera footage of the incident in question.  The numbers in the citation refer to the hour, minute, and second of the corresponding event in the footage.

fighting in "an urgent tone."  Murray Decl., Exh. H at ¶8; Pl. Dep. at 104:16–20.

Neither inmate complied, but Fredricks retreated into his cell.  Murray Decl., Exh.

H at ¶¶8–9; Pl. Dep. at 10:14–17.  CO Shaheen did not use a chemical agent to quell

the situation.  Pl. Dep. at 104:22.

At the time, CO Richards was in the Housing Area 3D control room,

approximately 10 feet away from the cells, out of visible range.  Murray Decl., Exh.

H at ¶¶10–11.  Although he could not see what was going on, when CO Richards

heard the loud sounds, he believed they were caused by an altercation, so he

immediately requested a de-escalation team and activated the probe team alarm.

Murray Decl., Exh. G at ¶¶5, 7.

Approximately 25 seconds after Rodriguez attacked Fredricks, CO Shaheen

saw Fredricks enter his cell, and yelled for CO Richards to close the cell door from

the control room, after which CO Shaheen immediately saw the cell door close.

Murray Decl., Exh. H at ¶9.  Although Fredricks testified at his deposition that he

did not hear CO Shaheen yell to CO Richards to close the door, Fredricks confirmed

that his cell door did in fact close.  Pl. Dep. at 103:5–8.  At this time, Rodriguez

could no longer strike Fredricks.  *Id.* at 102:18–20.

A probe team arrived about five minutes after the incident ended and took

Fredricks to a medical clinic within NIC where he was given "glue stitches" for the

laceration inflicted by Rodriguez.  *Id.* at 105:4–6, 106:1–2, 110:20–25.

### 7.  Fredricks Received an Infraction from Captain Omar Smith

Three days later, on January 7, 2020, Captain Omar Smith ("Captain

Smith") delivered to Fredricks an infraction for the incident with Rodriguez.

Murray Decl., Exh. F at ¶3; Pl. Dep. at 111:12–16.  Captain Smith was not present

for the incident.  Murray Decl., Exh. F at ¶6.  He also stated that he was not

responsible for investigating it, and did not have any personal knowledge of any

potential threat to Fredrick's safety.  Murray Decl., Exh. F at ¶¶4–7; Pl. Dep. at

111:5–23.  Despite receiving an infraction, Fredricks was not disciplined.  Pl. Dep.

at 112:1–10.

### B. Procedural Background

Fredricks filed a complaint against CO Shaheen, CO Richards, Captain Smith,

and three John Doe officers on July 21, 2020.  Dkt. No. 2.  Fredricks amended the

complaint four times, and filed the operative pleading, the FAC, on February 16,

2021.  Dkt. No. 46.  The FAC substituted ADW Parrilla, CO Henry, and Captain

John in place of the three John Doe defendants.

On December 13, 2021, Defendants moved for summary judgment on all

claims.  Defendants' Motion for Summary Judgment, Dkt. No. 89; Rule 56.1

Statement, Dkt. No. 90; Memorandum of Law in Support of the Motion for

Summary Judgment ("Def. Mem.") Dkt. No. 92.  Along with their motion,

Defendants filed the Murray Declaration, which attached Exhibits A through J.

Dkt. No. 91.  In response and in opposition, Fredricks filed a motion for summary

judgment on February 3, 2022.  Notice of Motion for Summary Judgment in Reply

to Defendants' Counsel, Dkt. No. 105; Plaintiff's Motion for Summary Judgment

("Pl. Opp."), Dkt. 106; Rule 56.1 Statement of Material Facts in Reply to the

Opposite Motion for Summary Judgment, Dkt. No. 107.[5]  Defendants filed reply

papers on February 25, 2022, along with a second Rule 56.1 Statement.

Defendants' Reply Memorandum of Law ("Def. Rep."), Dkt. No. 112; Defendants'

Response to Plaintiff's Counter-Statement of Undisputed Facts, Dkt. No. 113.

This case has been referred to me for both general pretrial supervision and to

provide a report and recommendation on dispositive motions, specifically the

current motion.  Dkt. Nos. 95, 108.

## II.    DISCUSSION

### A. Legal Standards

#### 1. Motion for Summary Judgment

Pursuant to Rule 56 of the Federal Rule of Civil Procedure, a court "shall

grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "A fact is 'material' if it 'might affect the outcome of the suit under

the governing law,' and is genuinely in dispute 'if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'"  *Liverpool v.*

*Davi*s, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (citing *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986)).  "'Factual disputes that are irrelevant or

unnecessary' are not material and thus cannot preclude summary judgment."  *Sood*

*v. Rampersaud*, No. 12-CV-5486 (VB), 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17,

---

[5] Although at Docket Number 106 Fredricks filed a motion denominated "Plaintiff's
Motion for Summary Judgment," his "Notice of Motion" (Dkt. 105) as well as the
substance of his motion reflect not a cross-motion for summary judgment, but
rather an opposition to Defendants' motion for summary judgment.

2013) (quoting *Anderson*, 477 U.S. at 248). Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." *Ford v. Phillips*, No. 05-CV-6646 (NRB), 2007 WL 946703, at *4 (S.D.N.Y. Mar. 27, 2007) (cleaned up).

On a summary judgment motion, the Court's responsibility is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). "[W]here there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord,* 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986)). The court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vermont Teddy Bear Co.*, 373 F.3d at 244 (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). "In applying this standard, the court should not weigh evidence or assess the credibility of witnesses. These

determinations are within the sole province of the jury." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir. 1996)).

At the same time, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. "[T]he non-movant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Vidal v. Valentin*, No. 16-CV-5745 (CS), 2019 WL 3219442, at *5 (S.D.N.Y. July 17, 2019) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 586). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties" is not sufficient to defeat an "otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

Finally, no party may prove a fact by relying on "conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001). "Where . . . a plaintiff's case depends in part on his own statements and observations, such statements must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Bartley v. Collin*s, No. 95-CV-10161 (RJH), 2006 WL 1289256, at *3 (S.D.N.Y. May 10, 2006) (quoting *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004); Fed. R.

11

Civ. P. 56(e))).  "Thus, hearsay statements that would be inadmissible at trial, conclusory assertions, and mere denials contained in those affidavits are insufficient to create a genuine issue of material fact."  *Id.* (cleaned up).

### 2.  Standards Applicable to *Pro Se* Litigants

In the Second Circuit, "when a court considers a motion for summary judgment, 'special solicitude' should be afforded a *pro se* litigant."  *Falls v. (Police Officer) Detective Michael Pitt*, No. 16-CV-8863 (KMK), 2021 WL 1164185, at *10 (S.D.N.Y. Mar. 26, 2021) (collecting cases).  The submissions of the *pro se* litigant should be construed liberally and interpreted to raise the strongest arguments they suggest.  *Id.* (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  "[T]he submissions of a *pro se* plaintiff are held to a less stringent standard than those drafted by an attorney and must be liberally construed for the benefit of the plaintiff."  *Ford*, 2007 WL 946703, at *4 (cleaned up).  At the same time, "proceeding *pro se* does not relieve a litigant from the usual requirements of summary judgment."  *Best v. Drugs*, No. 14–CV–2648 (CM), 2017 WL 218251, at *3 (S.D.N.Y. Jan. 11, 2017).

### 3.  Local Civil Rules 56.1 and 56.2

#### a.  The Parties' Submissions Pursuant to Local Civil Rule 56.1

Local Civil Rule 56.1 requires any motion for summary judgment to be accompanied by a statement of material facts itemized into numbered paragraphs followed by a citation to the evidence in support of those facts that would be admissible.  Local Civ. R. 56.1(a) & (d).  The rule provides that "[e]ach numbered

paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civ. R. 56.1(c). Therefore, a party's failure to comply with Local Rule 56.1 "is grounds for deeming admitted the facts contained in [the opposing party's] Rule 56.1 statement." *Prunella v. Carlshire Tenants*, Inc., 94 F. Supp. 2d 512, 513 n.1 (S.D.N.Y. 2000). Further, "[a] party who declines to respond to a Rule 56.1 statement in the proper form eschews its right to have the Court search the record to determine whether the allegedly undisputed fact is in fact disputed." *Keawsri v. Ramen-Ya Inc.*, No. 17-CV-2406 (LJL), 2021 WL 3540671, at *3 (S.D.N.Y. Aug. 10, 2021) (citing *Holtz v. Rockefeller & Co.*, Inc., 258 F.3d 62, 73 (2d Cir. 2001)).

Here, although Fredricks' opposition papers include a Rule 56.1 statement, the facts he has alleged in the statement are largely immaterial, do not respond to Defendants' Rule 56.1 statement, and do not contain supporting citations to the record. "Local Rule 56.1 requires a party opposing summary judgment to submit a counterstatement with numbered paragraphs corresponding to each paragraph in the moving party's statement." *Suares v. Cityscape Tours, Inc.* 603 F. App'x 16, 17–18 (2d Cir. 2015) (citing to Local Civil Rule 56.1(b)). "The rule states that each paragraph of the movant's statement that is not 'specifically controverted by a correspondingly numbered paragraph in' the counterstatement 'will be deemed to be admitted for purposes of the motion.'" *Id.*

However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules" and may instead "opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Holtz*, 258 F.3d at 73 (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000)) (internal quotation marks omitted and further citation omitted). "[T]he court can also disregard legal conclusions or unsubstantiated opinions in a Local Rule 56.1 statement." *Weider Health & Fitness v. AusTex Oil Ltd.*, No. 17-CV-2089 (RMB) (OTW), 2018 WL 8579820, at *2 (S.D.N.Y. Dec. 19, 2018), *adopted by* 2019 WL 1324049 (Mar. 25, 2019). Further, "where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (cleaned up). "The court is not obligated, however, to accept a *pro se* litigant's factual assertions where they contradict his own previous statements or are otherwise 'beyond belief.'" *Adeniji v. New York State Off. of State Comptroller*, 557 F. Supp. 3d 413, 434 (S.D.N.Y. 2021) (quoting *Shabazz v. Pico*, 994 F. Supp. 460, 470 (N.D.N.Y. 1998)), *vacated on other grounds by Reynoso v. Harrison*, 205 F.3d 1324 (2d Cir. 2000)).

Given the foregoing, "in light of the [plaintiff's] *pro se* status, the Court [will conduct] an independent review of all of the evidence submitted by both parties, so as to ascertain whether the record actually reveals any material, disputed issues of

fact." *Wali*, 678 F. Supp. 2d at 178.

### b. Defendants Failed to Comply with Local Civil Rule 56.2

It does not appear from the docket that Defendants have complied with Local Civil Rule 56.2 and have not served or filed instructions for Fredricks regarding a motion for summary judgment.  Local Civil Rule 56.2 requires a party seeking summary judgment against a *pro se* litigant to provide notice to the litigant describing the nature and consequences of a motion for summary judgment.  Local Civ. R. 56.2.  Such a failure may be grounds for denying a motion.  *See, e.g., Tafuto v. New York State Off. for Child. & Fam. Servs.*, No. 08-CV-8433 (LTS) (THK), 2012 WL 4459803, at *4 (S.D.N.Y. Sept. 25, 2012).  However, if the record demonstrates that the plaintiff understood that he was "required to produce evidence supporting the issues of material fact that he needed to preserve for trial," the Court may recognize an exception to Local Civil Rule 56.2.  *Sawyer v. Am. Fed'n of Gov't Employees, AFL–CIO,* 180 F.3d 31, 36 (2d Cir. 1999) (summary judgment granted despite defendant's failure to comply with Local Rule 56.2 because "[plaintiff's] opposition to the summary judgment motion fail[s] not because he inadequately disputed key facts, but because his position on the merits [is] legally insufficient").  Here, Fredricks responded to Defendants' Motion for Summary Judgment with opposition briefing, a Rule 56.1 Statement, and supporting exhibits.  Accordingly, although Defendants failed to comply with Local Rule 56.2, the record establishes that Fredricks understood that he was required to produce evidence opposing the motion.

### B. Analysis

Defendants move for summary judgment on all of Fredricks' claims.  *See* Def. Mem. at 1.  Liberally construed, the Court understands Fredricks' contentions to be that Defendants violated his rights under the First and Fourteenth Amendments to the United States Constitution through the following claims: (1) failure to protect; (2) inciting an attack by an inmate and retaliation; and (3) failure to intervene. Each of these claims will be discussed in turn.[6]

#### 1. Fredricks Has Not Provided Sufficient Evidence For His Failure to Protect Claim to Survive Summary Judgment

For a jury to find that he has proven his failure to protect claim under the Fourteenth Amendment, Fredricks must provide sufficient evidence to satisfy "an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a subjective prong—perhaps better classified as a 'mens rea prong' or 'mental element prong'— showing that the officer acted with at least deliberate indifference to the challenged conditions."  *Velez v. City of New York*, No. 17-CV-9871 (GHW), 2019 WL 3495642, at *3 (S.D.N.Y. Aug. 1, 2019) (internal citations omitted).  As discussed below, Fredricks has not provided sufficient evidence such that a reasonable jury could find that he has satisfied either prong with respect to any of the Defendants.

---

[6] Although Fredricks alleged a disciplinary due process claim and a denial of medical care claim in his FAC, he has abandoned these two claims in his opposition to Defendants' motion.  *See* Pl. Opp. at 4–5.  Accordingly, as Defendants observe in their Reply, because the only claim Fredricks alleged against Captain Smith was disciplinary due process, Def. Reply at 1–2, the Court should grant summary judgment in Smith's favor on this basis.

16

### a.  Fredricks Has Not Satisfied the Objective Prong

The objective prong of his failure to protect claim requires that Fredricks demonstrate that he was housed in conditions that posed a substantial risk of either "generalized" or "particularized" serious harm.  *House v. City of New York*, No. 18-CV-6693 (PAE) (KNF), 2020 WL 6891830, at *12 (S.D.N.Y. Nov. 24, 2020).  To demonstrate a generalized risk of harm, Fredricks would have to present evidence that all inmates were in harm's way, e.g., the housing was "particularly violent such that leaving an inmate unsupervised for any period of time could pose a substantial risk of serious harm to an inmate." *Id.*  Alternatively, Fredricks could demonstrate a particularized risk of serious harm to himself by showing that he knew his attacker before the alleged incident or that he knew an attack was imminent.  *See House*, 2020 WL 6891830, at *13 (objective prong satisfied where plaintiff said particular inmate had warned him to be careful, because someone was going to jump him).  Here, Fredricks has not demonstrated either a generalized or particularized risk of serious harm.

The evidence presented demonstrates that upon arrival at the Intake Unit on January 3, 2020, Fredricks told CO Henry: "Are you aware of my situation?  Do you know that I cannot be left with certain people as far as gang members?"  Pl. Dep. at 61:14–19.  This communication is the full extent of what Fredricks told CO Henry—Fredricks mentioned nothing about his pending lawsuit against a New York State correction officer, nor did he offer any other explanation as to why he could not live with a gang member (much less specify any particular inmates).  *Id.* at 63:8–9.  Later that day, Fredricks spoke with ADW Parrilla, telling him:

> My situation, I would like you to look into my situation. I
> cannot be living with these Bloods, these gang members.
> I got cases pending in court, got a lot of situations going
> on, and [as] far as cases with new charges, so respectfully,
> man, can you please put me in a cell by myself?

*Id.* at 72:4–12. Here, too, Fredricks did not provide any further detail to ADW

Parrilla. *Id.* at 72:20–24.

The evidence presented by Fredricks thus consists solely of "conclusory

allegations" and "unsubstantiated speculation." *Fujitsu Ltd.*, 247 F.3d at 428. This

is insufficient for a jury to find either a generalized or particularized risk of harm.

To begin with, Fredricks does not argue that there was an overarching threat to all

inmates in the facility. His allegations and the evidence he has presented relate

solely to himself and his precise situation. In addition, his statements are not

specific enough to make a particularized showing. For example, in *House*, the

plaintiff testified that another inmate, whom the plaintiff identified by name, had

given him a warning. *House*, 2020 WL 6891830, at *13. Fredricks' statements to

CO Henry and ADW Parrilla provided no detail or specific information about a

possible assailant. Additionally, Fredricks did not mention his lawsuit or tell them

what it was about. It was thus reasonable for both CO Henry and ADW Parrilla to

believe Fredricks was not in danger.

### b. Fredricks Has Not Satisfied the Subjective Prong

The subjective prong of his failure to protect claim requires that Fredricks

present evidence demonstrating that the "prison official acted purposefully or with

an objective reckless disregard of the risk to the inmate." *House*, 2020 WL 6891830,

at *14. Fredricks must present evidence showing that the officers acted with more

than just a "lack of due care" and were more than negligent. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986). "A plaintiff must go further . . . and show that the defendants actually inferred from [the] disclosure that a substantial risk of serious harm existed." *Murray v. Goord*, 668 F. Supp. 2d 344, 359 (N.D.N.Y. 2009) (citations omitted). A showing can be made by demonstrating that "a substantial risk of inmate attacks, was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it." *Id.*

Here, Fredricks informed CO Henry and ADW Parrilla only of a vague threat he was facing from an unnamed inmate. Pl. Dep. at 61:14–19, 72:4–12. He neither explained to them why he was in danger, nor did he specify where the danger might come from. *Id.* at 63:12–20, 72:20–24. At best, CO Henry and ADW Parrilla might have been aware that Fredricks was afraid. But Fredricks has not presented any evidence to show that they knew why he was afraid or why he was in any real danger. Fredricks himself testified that he was "hoping or assuming" that ADW Parrilla would follow up on Fredricks' murky request to him and would then understand why Fredricks was afraid. Pl. Dep. at 72:20–24. "Indeed, a number of courts in this district have found that an inmate informing an officer about a nebulous or untethered fear does not put an officer on notice that the inmate is at risk of attack." *Velez*, 2019 WL 3495642, at *4 (collecting cases). In *Velez*, the plaintiff informed an officer that "there was an inmate pacing up and down in the

holding cell" and the court concluded that from that statement, a jury could find that the plaintiff was concerned for his safety, but that this evidence did not support the proposition that the officer in question "was aware or should have been aware of a specific risk to [the] Plaintiff." *Id.* at *5. Here, as in *Velez*, Fredricks' statements to CO Henry and ADW Parrilla were not sufficient to put them on notice of a substantial risk of harm to him. Thus, Fredricks does not meet the subjective prong.

Because Fredricks has not produced evidence to succeed on either prong, a reasonable jury could not find that Defendants failed to protect Fredricks in the circumstances presented.

### 2. Fredricks Has Not Provided Sufficient Evidence for a Reasonable Jury to Find that Captain John Incited the Attack By Rodriguez or that Captain John Retaliated against Him

Fredricks has also failed to provide sufficient evidence to support his allegations against Captain John. Fredricks has alleged that Captain John incited Rodriguez to attack him by giving him a "subliminal message." *Id.* at 81:6–8, 86:10–13. The Court will address this allegation as both a claim that Captain John incited Rodriguez to attack and as a First Amendment retaliation claim.

### a. Captain John Did Not Incite the Attack Against Fredricks

An inmate "can state a claim under the Eighth Amendment against a corrections officer who spreads malicious rumors about him if the rumors 'incited other inmates to assault [the plaintiff] . . ., thereby placing him at grave risk of physical harm.'" *Bouknight v. Shaw*, No. 08-CV-5187 (PKC), 2009 WL 969932, at *4

(S.D.N.Y. Apr. 6, 2009) (quoting *Young v. Coughlin*, 93-CV-262 (DLC), 1998 WL 32518, at *7 (S.D.N.Y. Jan. 29, 1998)).[7]  "However, if the plaintiff fails to allege— with concrete facts, not conclusory assertions . . . that the corrections officer acted with a 'sufficiently culpable state of mind,' then the claim must be dismissed."  *Id.*

Fredricks has only provided conclusory assertions that Captain John spoke to Rodriguez.  In the FAC, Fredricks alleges that Captain John expressed the following to Rodriguez: "he's going to get what he's asking for that's what happen[s] when you write grievance and right one of mines [sic]."  FAC at 7.  Notably, at his deposition, when asked if Captain John ever told Rodriguez to harm him, Fredricks acknowledged that "[h]e didn't say it is personally.  I don't think he would do it like that.  I believe Peter Rodriguez knew what time it was, man."  Pl. Dep. at 87:3–5.  Captain John denied speaking with Rodriguez, and Fredricks has not provided evidence showing otherwise.  Murray Decl., Exh. E ¶¶9–12.  Even assuming he is correct that Captain John did speak with Rodriguez that night, Fredricks has not provided any evidence to prove that Captain John was aware of his pending lawsuit and Captain John denies knowing about the lawsuit at the time.  Pl. Dep. at 87:6– 10; Murray Decl., Exh. E ¶¶4–5.  According to Fredricks, Captain John "most likely" knew about the pending litigation because he is part of the DOC and according to

---

[7] Fredricks was a pretrial detainee at the time of the incident giving rise to this lawsuit and as such, the Due Process Clause under the Fourteenth Amendment applies, not the Eighth Amendment.  However, "[t]he Second Circuit has held that an 'unconvicted detainee's rights are at least as great as those of a convicted prisoner.'  Thus, the analysis is the same under the Due Process Clause as it would be under the Eighth Amendment."  *Bouknight*, 2009 WL 969932, at *3 (citations omitted).

Fredricks, the "DOC [could] find out anything" about his grievances.  Pl. Dep. at 87:13–21.  Such an allegation, without more, is insufficient to advance such a claim to trial.

In a recent case in this District, *Montanez v. Lee*, the court found that the plaintiff's claim was insufficient to overcome a motion for summary judgment where he could not definitively say that one officer told another officer that he was a snitch, and he did not submit any evidence to refute the officers' sworn testimony denying any such conversation.  No. 14-CV-3205 (NSR), 2019 WL 1409451, at *4 (S.D.N.Y. Mar. 28, 2019).  Here, as in *Montanez*, in an attempt to refute Captain John's sworn testimony, Fredricks has only provided conclusory assertions, which do not suffice to keep his claim alive.

### b. Fredricks Does Not Have a Successful First Amendment Retaliation Claim Against Captain John

In the FAC, Fredricks makes a broad retaliation claim against all Defendants, alleging that he was retaliated against while on Rikers Island but he does not specify how that was the case.  In his deposition, Fredrick testified that he interpreted Captain John's alleged statement to Rodriguez to be retaliation.  Pl. Dep. at 86:12–16.  The Court construes this allegation to be a First Amendment retaliation claim against Captain John.

To succeed on a First Amendment retaliation claim, a plaintiff "must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action."  *Vasquez v. Cty.*

22

*of Rockland*, No. 13-CV-3652 (SLC), 2020 WL 883514, at *7 (S.D.N.Y. Feb. 24, 2020) (cleaned up). Courts should "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotation marks omitted).

Fredricks generally alleged that he thought Captain John's actions were retaliatory because he had filed a pending lawsuit in the Northern District of New York and a grievance; the first prong thus appears to be satisfied. *See, e.g., Rasheen v. Adner*, 356 F. Supp. 3d 222, 243 (N.D.N.Y. 2019) ("It is well-settled that filing a grievance is constitutionally protected conduct.") (citations omitted). Fredricks has not presented sufficient evidence, however, to meet the second prong—at his deposition he testified that he does not believe Captain John told Rodriguez to attack him directly, he just gave him a "subliminal message." A retaliation claim must be "supported by specific and detailed factual allegations." *Dolan*, 794 F.3d at 295. In the prison context, an adverse action is any "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). A plaintiff can demonstrate that retaliatory conduct meets that standard either by alleging that "he has been chilled from engaging in the First Amendment activities that triggered the retaliation," or

alleging "a serious injury that is independent of a possible First Amendment chill." *Smith v. Maypes-Rhynders*, No. 07-CV-11241 (PAC) (MHD), 2009 WL 874439, at *4 (S.D.N.Y. Mar. 31, 2009). "Insulting or disrespectful comments directed at an inmate generally do not rise to this level." *Davis*, 320 F.3d at 353.

The entirety of Fredricks' claim is that Captain John gave Rodriguez a "subliminal message" and that he understood this to mean Rodriguez should attack Fredricks. In *Davis v. Goord*, the court found acts such as denying an inmate a medically required diet or denying an inmate medical appointments to constitute adverse actions. *Id.* However, the court found that the allegations regarding conversations between prison officials to be "speculative." *Id.* Similarly, Fredricks' claims about a "subliminal message" are entirely speculative. In addition, Fredricks filed a grievance *after* Captain John's alleged statements to Rodriguez, demonstrating that he was not deterred from engaging in First Amendment activities, and deterrence is a "key aspect" in determining if an inmate has suffered an adverse action. *See, e.g., Turner v. Sidorowicz*, No. 12-CV-7048 (NSR), 2016 WL 3938344, at *4 (S.D.N.Y. July 18, 2016) (no deterrence when plaintiff continued to file grievances after alleged retaliation).

Finally, Fredricks does not meet the third prong, as there is no evidence to show that anything Captain John told Rodriguez was in connection with Fredricks' pending lawsuit or his grievance. As discussed above, Captain John contends in his sworn statement that he did not know about the pending lawsuit and Fredricks has not presented evidence to show otherwise. *See Vasquez,* 2020 WL 883514, at *8

("There is no evidence in the record that any of the Individual Defendants were aware of the prior lawsuit"). Accordingly, Fredricks' retaliation claim fails.

### 3. Fredricks Has Not Provided Sufficient Evidence for a Reasonable Jury to Find that CO Shaheen and CO Richards Failed to Intervene in the Attack

Fredricks alleges that CO Shaheen and CO Richards did not respond appropriately to his altercation with Rodriguez, which the Court construes as a failure to intervene claim. In order to succeed on such a claim, a plaintiff must show that the defendant "observed or had reason to know the plaintiff was involved in a physical altercation with another inmate" and "that the defendant had an extended opportunity to stop the attack but failed to take any action to do so." *Blake v. Sexton*, No. 12-CV-7245 (ER), 2016 WL 1241525, at *4 (S.D.N.Y. Mar. 24, 2016) (citations omitted).

Fredricks satisfies the first element. The parties agree that CO Shaheen and CO Richards were aware of the physical altercation. Pl. Dep. at 104:16–20; *see* Murray Decl., Exh. H at ¶6. However, Fredricks has not adduced any evidence to succeed on the second element. CO Shaheen and CO Richards could have only prevented the initial strike by Rodriguez if they had believed Fredricks was in danger, which Fredricks does not even allege. After Rodriguez's initial strike, CO Shaheen and CO Richards acted swiftly to control the situation by closing Fredricks in his cell, away from Rodriguez, and calling for the probe team. Other cases with similar facts have resulted in summary judgment for defendants. *See, e.g., Leckie v. City of New York*, No. 18-CV-3917 (RRM) (LB), 2021 WL 84234, at *5 (E.D.N.Y. Jan. 11, 2021) (summary judgment granted where undisputed facts showed officer

25

responded to altercation "by promptly activating the alarm, summoning a Probe Team, and separating [plaintiff] from the other inmates").

Fredricks alleges that CO Shaheen should have used a chemical agent to stop the altercation. FAC at 8. However, the security camera footage, Fredricks' deposition, and CO Shaheen's sworn testimony, all demonstrate that a chemical agent was not necessary and CO Shaheen employed an appropriate response. Murray Decl., Exh. J at 11:05:45–11:06:28; Pl. Dep. at 104:16–20, 10:14–17, 103:5–8, 102:18–20; Murray Decl., Exh. H at ¶¶8–9 (together demonstrating that as soon as altercation started, CO Shaheen repeatedly told Fredricks and Rodriguez to stop in urgent tone, and that once Fredricks was in his cell, yelled for CO Richards to close the door, so that Rodriguez was no longer able to physically harm Fredricks). If a chemical agent had been used, it would only have been after Rodriguez's initial strike and after Fredricks had sustained his injury. Correctional Officers use chemical agents on "recalcitrant" inmates, "to force compliance with direct orders." *Boland v. Wilkins*, No. 18-CV-1958 (MPS), 2020 WL 4195740, at *5 (D. Conn. July 21, 2020). In addition, "the use of pepper spray constitutes a significant degree of force." *Quinones v. Rollison*, No. 18-CV-1170 (AJN), 2020 WL 6420181, at *4 (S.D.N.Y. Nov. 1, 2020) (citing *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010)). Here, because within several seconds Fredricks was back in his cell and the door was closed, it was reasonable for CO Shaheen and CO Richards not to have used a chemical agent, and no jury could find otherwise on the record before the Court.

26

In addition, it was reasonable for CO Richards and CO Shaheen not to physically intervene because Rodriguez had what appeared to be a sharp metal object.  Courts have routinely observed that correctional officers have no obligation to physically intervene in inmate altercations, thereby putting their own safety at risk.  *See, e.g., Velez*, 2019 WL 3495642, at *5 (collecting cases).

### 4.  Defendants Are Entitled to Qualified Immunity

Even if Fredricks were successful on any of his claims, Defendants would be entitled to qualified immunity.  A government official may be entitled to immunity if (1) his conduct "did not violate clearly established law," or (2) it was "objectively reasonable" for that official to believe that the action he took did not violate the law. *Naumovski v. Norris*, 934 F.3d 200, 210 (2d Cir. 2019).

Courts have granted qualified immunity to defendants on failure to protect claims when an inmate informs an officer "about a nebulous or untethered fear," stating that this "does not put [that] officer on notice that the inmate is at risk of attack."  *Velez*, 2019 WL 3495642, at *4 (collecting cases).  "A specific identifiable fear of assault is required to support a failure to protect claim."  *Conquistador v. Adamaitis*, No. 19-CV-430 (KAD), 2021 WL 810361, at *6 (D. Conn. Mar. 3, 2021). In *Conquistador*, the plaintiff did not identify the inmates who threatened him, nor was there evidence of a history of violence between plaintiff and anyone else housed in plaintiff's unit.  There, the court found that "a reasonable officer would not have understood that his failure to act in response to the unspecified threat violated [plaintiff's] constitutional rights."  *Id.*

Similarly, Fredricks has not provided any evidence that would lead a jury to

believe that a reasonable officer would have understood that a failure to act would put Fredricks in harm's way.  With regard to CO Henry, ADW Parrilla, and Captain John, Fredricks has not provided any evidence that they were aware of Fredricks' pending litigation, let alone that they had reason to believe Fredricks was under imminent threat.  Even if a jury were to find that Fredricks did tell CO Henry and ADW Parrilla that he was in danger, as in *Velez*, his statements were nebulous and would not suffice to demonstrate that Defendants were on notice.  Even if Captain John knew about Fredricks' pending litigation, Fredricks himself admitted that he does not believe Captain John told Rodriguez to attack him directly.  Pl. Dep. at 87:1–5.  Fredricks has provided no further evidence on this point.  Accordingly, CO Henry, ADW Parrilla, and Captain John are entitled to qualified immunity.

CO Shaheen and CO Richards are also entitled to qualified immunity. Although Fredricks argues that they did not take adequate measures to protect him from Rodriguez, a jury would find that the undisputed evidence shows otherwise. CO Shaheen and CO Richards stopped the attack soon after it began by verbally instructing Fredricks and Rodriguez to stop fighting and calling for assistance. Murray Decl., Exh. H at ¶16.  Fredricks sustained only one injury, the laceration to his face resulting from Rodriguez's initial strike.  Pl. Dep. at 102:21–24.  CO Shaheen and CO Richards were under no obligation to intervene physically. "Prison officials have no duty to put their own safety at risk to stop an altercation between inmates — prison officials only are required to act reasonably to protect the inmates. It would be unreasonable as a matter of law to expect that an unarmed

guard would intervene physically between two fighting inmates." *Brown v. Correction Officer Shon Chambers*, No. 92-CV-7622 (LAP), 1995 WL 234681, at *4 (S.D.N.Y. Apr. 20, 1995), *aff'd sub nom. Brown v. Chamber*, 99 F.3d 402 (2d Cir. 1995). As such, CO Shaheen and CO Richards acted reasonably and thus are entitled to qualified immunity as well.

## III.    CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' motion for summary judgment be granted.

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Analisa Torres, United States Courthouse, 500 Pearl Street, New York, NY 10007. Any requests for an extension of time for filing objections must be directed to Judge Torres.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

If Fredricks does not have access to cases cited herein that are reported on LexisNexis or Westlaw, he should request copies from counsel for Defendants. *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009); Local Civil Rule 7.2, Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: August 3, 2022
       New York, New York

_____
JAMES L. COTT
United States Magistrate Judge